[Cite as *State v. Armstrong*, 2016-Ohio-7841.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2015-P-0075** |
| - vs - | : | |
| DERICK ARMSTRONG, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2015 CR 00213D.

Judgment: Reversed and vacated.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Kristina Reilly,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Carolyn K. Mulligan*, 9442 State Route 43, Streetsboro, OH 44241 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Derick Armstrong, appeals from the judgment of the Portage County Court of Common Pleas convicting him, after a trial by jury, of corrupting another with drugs, a felony of the second degree and aggravated possession of drugs, a felony of the fifth degree. Appellant does not challenge the latter conviction; thus, at issue is whether the conviction for corrupting another with drugs is supported by both

sufficient as well as the manifest weight of the evidence. For the reasons discussed in this opinion, that conviction is reversed and vacated.

{¶2} Appellant met Mitchell White in a West Virginia jail in 2013. After their release, the two would meet occasionally and party. On March 16, 2015, White advised appellant he and his girlfriend, A.M., a minor, were traveling to Akron, Ohio so A.M. could visit her grandmother. White asked if appellant was interested in riding along. Appellant, who had an aunt, uncle, and cousins residing in Portage County, accepted the invitation and viewed it as an opportunity to visit his relatives.

{¶3} White, with A.M., arrived to pick appellant up at approximately 11:00 p.m that night. They drove through the night but, when they arrived in Akron, A.M.'s grandmother did not answer her apartment door. The trio decided to find a hotel to drop off their belongings, rest, and shower. They searched for places to stay and discovered the Hiram Inn had an available room. Upon arrival, on March 17, 2015, White paid cash for the room. White and A.M. eventually went shopping. Appellant, whose relatives were at work, stayed behind and called an old friend, Travis Hammons, a.k.a. T-Ham.

{¶4} T-Ham arrived at the Inn and he and Appellant began smoking methamphetamine ("meth") and drinking beer together at the Inn. Later, White and A.M. joined the two men in the room; according to appellant, neither White nor A.M. smoked meth with him and T-Ham. Appellant speculated, however, that the two were nevertheless injecting the drug because he had observed hypodermic needles with their belongings and they would periodically "disappear into the bathroom and come out all jacked up and shit." Appellant consistently maintained he and T-Ham exclusively smoked meth with one another and did not do so with either White or A.M. Appellant

2

further insisted he did not provide any meth for White or A.M. to inject with their needles.

{¶5} The group eventually went to two local bars and, at approximately 4:00 a.m. on March 18, 2015, the group traveled to a casino in Cleveland, Ohio. Upon their arrival, White and T-Ham entered the casino. Neither appellant nor A.M., however, possessed valid identification and, as a result, they returned to the vehicle. Appellant ultimately fell asleep. At some point in the morning, appellant was awakened by A.M. She was "hysterical, flipping out, saying she can't find [the] guys and we need to go back to the room 'cause check out time is at 11." When A.M. and appellant returned to the Hiram Inn, "the drug task force and cops and stuff were sitting there just basically waiting on us."

{¶6} Ashley Andrews, the Hiram Inn desk clerk, arrived at work on the morning of March 18, 2015, and noticed that the vehicle in which appellant, White, and A.M. had arrived was not parked in the Inn's lot. Check-out time passed and Andrews had neither seen nor heard from any of the three individuals. Because the room was booked for another party later that day, Andrews called the room and knocked on the door, but received no response. When she entered the room, she "saw their stuff" and called the Inn's manager, Anita Stocz. Stocz entered the room and determined the room was unoccupied; she noticed, however, the room was messy, with personal belongings, including a TASER, scattered indiscriminately on the floor, bed, and ottoman. She also noticed a smell with which she was "totally unfamiliar." Given the unusual circumstances, Stocz contacted the Hiram Police Chief who sent officers to the Inn.

**{¶7}** Stocz admitted officers into the room, where they discovered a firearm, needles, tinfoil, burnt residue, and pills in plain view. The drug task force was summoned and officers applied for a search warrant. The warrant was issued and, among the items seized, were a box containing a large quantity of powdered meth (approximately 16.16 grams), small plastic "bindle" bags, typically used in the sale of meth, two digital scales, a hand gun, and a West Virginia back pack, containing a small amount of meth ( approximately 0.21 grams) and 13 amphetamine pills.

**{¶8}** When appellant and A.M. approached the room, officers met and questioned them. A.M. appeared under the influence of a drug of abuse and became hostile with officers. She provided them with a false name and was generally uncooperative. The officers eventually discovered A.M.'s actual identity and, as a result, determined she was a 17-year-old minor. Officers also discovered a small amount of meth in A.M.'s purse. Out of concern for her safety, she was taken to a nearby medical facility where she was treated and screened for substances. The results of the tests revealed A.M. tested positive for amphetamine, meth, methadone, and opiates, including suboxone. According to the treating physician, A.M. disclosed she had been shooting up meth for "that day as well as many days before" and that she had ingested the suboxone "that day."

**{¶9}** During his questioning, appellant was cooperative with officers and acknowledged ownership of the West Virginia bag as well as its contents. He further surrendered several Buprenorphine (suboxone) pills which were on his person. Appellant vehemently maintained none of the remaining items seized from the room belonged to him. Appellant also stated he was unaware A.M. was a juvenile. He

4

admitted that, on their journey from West Virginia to Akron, he had a conversation with White in which he noted that A.M. appeared rather young. Although White indicated A.M. was not a minor, appellant pointed out the young female was his responsibility.

{¶10} Appellant consistently denied doing any meth with White or A.M. and stated he did not provide either individual with drugs. He asserted he observed the two disappear into the Inn's bathroom and assumed they were shooting up given their demeanor when they exited the room; appellant still maintained he did not witness the couple shooting meth in his presence and denied knowledge of the large quantity of meth, which was seized from a box found in the room.

{¶11} Appellant was indicted on one count of aggravated trafficking in drugs, a felony of the first degree, in violation of R.C. 2925(A)(2) and (C)(1)(d) (meth, a Schedule II controlled substance in an amount that equals or exceeds five times the bulk amount but is less than 50 times the bulk amount); aggravated possession of drugs, a felony of the second degree, in violation of R.C. 2925.11(A) and (C)(1)(c) (meth, a Schedule II controlled substance in an amount that equals or exceeds five times the bulk amount but is less than 50 times the bulk amount); possessing criminal tools, in violation of R.C. 2923.24(A) and (C), a felony of the fifth degree; corrupting another with drugs, a felony of the second degree, in violation of R.C. 2925.02(A)(4)(c) (involving a Schedule I or II controlled substance, to wit: meth); interference with custody, a felony of the fourth degree, in violation of R.C. 2919.23(A)(1); endangering children, a misdemeanor of the first degree, in violation of 2929.22; contributing to the delinquency or unruliness of a child, a misdemeanor of the first degree, in violation of R.C. 2919.24(A)(1); and having weapons while under disability, a felony of the third degree, in violation of R.C.

5

2923.13(A)(4). Appellant entered a plea of not guilty and the matter proceeded to jury trial. On August 20, 2015, the jury returned verdicts of guilty on a lesser degree of aggravated possession of drugs, a felony of the fifth degree, finding appellant possessed less than the bulk amount. It also returned a verdict of guilty on the charge of corrupting another with drugs. Appellant was acquitted on all remaining counts.

{¶12} At the sentencing hearing, the trial court sentenced appellant to a term of five years imprisonment on the corrupting-another-with-drugs charge and 11 months on the aggravated-possession-of-drugs conviction. The court ordered appellant's sentences to be served concurrently. This appeal follows.

{¶13} Appellant's assignment of error provides:

{¶14} "Defendant-appellant's conviction for corrupting another with drugs is based upon mere conjecture, not supported by sufficient evidence and against the manifest weight of evidence when the state fails to produce any evidence as to three of the elements of the crime."

{¶15} A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle*, 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi*, 179 Ohio App.3d 326, 2008-Ohio-6062 ¶9, 901 N.E.2d 856 (11th Dist.)

{¶16} In contrast, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of

6

the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-*15 (Dec. 23, 1994).

{¶17} Appellant was indicted for corrupting another with drugs, pursuant to R.C. 2925.02(A)(4)(c). That statute provides: "No person shall knowingly do any of the following: By any means * * * : Induce or cause a juvenile who is at least two years the offender's junior to commit a felony drug abuse offense, when the offender knows the age of the juvenile or is reckless in that regard." Appellant's indictment charged him with corrupting another with drugs under this subsection, but alleged, with particularity, that appellant did:

> {¶18} knowingly by any means induce or cause a juvenile, to wit: Jane Doe, dob 6/27/99, who is at least two years [his] junior to commit a felony drug abuse offense, involving a Schedule I or II controlled substance, to wit: Methamphetamine, when the offender knows the age of the juvenile or is reckless in that regard.

{¶19} While there was evidence that A.M. ingested suboxone earlier "that day," and there was evidence that appellant was the only individual in the group in possession of suboxone, the indictment *did not* charge appellant in the alternative or with an additional count of corrupting the juvenile with suboxone, a Schedule III controlled substance. Even though the elements of the statute do not ostensibly require a charging instrument to include the drug at issue, this particular indictment specified what the state intended to prove; namely, that appellant corrupted A.M. with meth. While this detail might ordinarily be resolved by a bill of particulars, the narrow nature of

7

the allegation in the indictment precluded the state from attempting to prove the charge, via this count, by recourse to evidence relating to appellant's possession of suboxone.

{¶20} Every defendant has a due process right to notice of a specific charge. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶60 citing *Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal"). Here, the state never alleged, or sought to amend the indictment to allege appellant corrupted another with suboxone, a schedule III controlled substance. Given the specificity of the charging instrument, the issue of whether appellant corrupted another with suboxone was not before the jury. Accordingly, even if there was sufficient evidence to support a conviction on a hypothetical charge specifying suboxone, appellant's possession of that drug cannot be considered in our analysis of whether the state met its burdens of production and persuasion for the indicted charge of corrupting another with drugs, to wit: meth.

{¶21} With this in mind, to obtain a valid conviction for corrupting another with drugs, the state was required to prove, beyond a reasonable doubt, appellant (1) knowingly induced the juvenile or caused the juvenile to use meth and (2) he either knew she was a juvenile or was reckless in that regard. Given the nature of the evidence, the jury was required to assume the meth injected by A.M. belonged to appellant such that he knowingly induced or caused her to use it. Because the state

8

failed to circumstantially establish this necessary predicate, the evidence is not constitutionally adequate for a valid conviction.

{¶22} It is well-settled that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus. "Circumstantial evidence has been defined as testimony not grounded on actual personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established." *State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001 , 2014-Ohio-4304, ¶22, citing *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988). An inference is "a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven." *State v. Nevius*, 147 Ohio St. 263, 71 N.E.2d 258 (1947). It consequently follows that "when circumstantial evidence forms the basis of a conviction, that evidence must prove collateral facts and circumstances, from which the existence of a primary fact may be rationally inferred according to common experience." *Windle*, *supra* at ¶34.

{¶23} A conviction, however, may not be based upon the "stacking of inferences." *Payne*, *supra,* at ¶23. "When an inference, which forms the basis of a conviction, is drawn solely from another inference and that inference is not supported by any additional facts or inferences drawn from other established facts, the conviction is improper." *Id. See also State v. Maynard*, 10th Dist. Franklin No. 11AP-697, 2012-Ohio-2946, ¶27. The rule against inference-stacking essentially forbids the drawing of an inference from evidence, which is too uncertain or speculative or which raises merely a possibility or conjecture. While reasonable inferences may be drawn from the facts

9

and conditions established, they cannot be drawn from facts or conditions merely assumed.

{¶24} The state produced evidence that A.M., a juvenile, had meth in her system on March 18, 2018, and disclosed that she had been injecting meth on that day as well as several days prior. It also established A.M. had a certain quantity of meth in her purse when she encountered the police. Appellant testified he did not observe A.M. injecting meth and he did not share any meth with her while he was with her. At trial, he testified he deduced that A.M. was injecting meth with White on the night of March 17 and the early morning of March 18 inside a closed bathroom because they possessed needles and they would exit the bathroom "all jacked up." He testified neither he nor T-Ham injected the drug.

{¶25} Appellant possessed a small amount of meth located in his West Virginia bag. He admitted to possessing the amount found in the bag and conceded he smoked it with his friend, T-Ham. Alternatively, a very large quantity of meth was found in a closed box. The box was located, along with small baggies, during the search of the room. Neither of these items were found inside appellant's bag. Appellant was charged with possession of this large quantity, as well as trafficking (based upon the baggies), but the jury acquitted him of the trafficking charge as well as the charge involving the greater quantity; he was found guilty only of possessing the small amount found in his bag.

{¶26} The meth, upon which the charge of corrupting another with drugs was based, *could* have issued from one of various uncertain sources: (1) the supply in appellant's possession; (2) the large quantity in the box; (3) A.M. herself; (4) an

independent supply furnished by White (who was not present at the time of the arrest); or (5) an unidentified individual from whom A.M. or White may have purchased drugs. While it is possible that appellant's supply *could have been* the source of the meth that A.M. injected, given the evidence, it is equally possible the meth she injected came from any of the other potential sources. Because there was no additional circumstantial evidence to support the inference that appellant's supply was the source, the conviction is based upon an *assumption*; namely, that, despite appellant's consistent denials, appellant knowingly provided A.M. with the drug. In other words, the conviction was premised upon impermissible inference-stacking.

{¶27} We acknowledge that the jury instructions simply tracked the language of the corrupting-another-with-drugs statute and did not specifically advise the jury that the charge itself was premised exclusively upon meth. In this regard, the jury *may have* based its verdict upon its view that appellant corrupted A.M. with suboxone. Unfortunately, we have no way of knowing which drug the jury based its verdict on. And, as already noted, the issue of whether appellant provided, induced, or caused A.M. to commit a felony drug offense with suboxone was not properly before the jury because it was not charged in the indictment. Accordingly, even if the jury's verdict was based upon its conclusion that appellant corrupted A.M. with suboxone, that verdict would be a nullity as it would represent a conviction on a fictional charge. In light of the actual charges, we can only analyze the evidence as it relates to the meth.

{¶28} Assuming the jury premised its verdict upon appellant's corruption of A.M. with meth, that verdict is a product of speculation. Upon analysis, appellant's conviction could only be based on an inference which was dependent *not* upon an established

11

fact, but upon another inferential assumption. Although reasonable inferences may be drawn from evidence, it is the state's burden to present evidence on each element of the charged crime from which those inferences may be drawn. It must be borne in mind that proof must be sufficient for the jury to find guilt beyond a reasonable doubt. Thus, although the state need not exclude every reasonable theory of innocence to sustain a conviction, we are loath to endorse inference-stacking as a means to upholding a conviction. Because the state failed to establish, beyond a reasonable doubt, that appellant knowingly induced or caused A.M. to use meth, the conviction is based upon insufficient evidence.

{¶29} Appellant's assignment of error has merit.

{¶30} For the reasons discussed in this opinion, the judgment convicting appellant of corrupting another with drugs is hereby reversed and vacated.

TIMOTHY P. CANNON, J.,

THOMAS R. WRIGHT, J.,

concur.