[Cite as *State v. Bernard*, 2018-Ohio-351.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO.  2016-A-0063 |
| BRIANNA BERNARD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2014 CR 00564.

Judgment:  Reversed and convictions are vacated

*Mike DeWine*, Ohio Attorney General, State Office Tower, 30 East Broad Street, 16th Floor, Columbus, Ohio 43215; *Brian Deckert,* Special Assistant Prosecutor, Ohio Attorney General's Office, 615 West Superior Avenue, 11th Floor, Cleveland, OH 44113 (For Plaintiff-Appellee).

*Michael A. Hiener*, P.O. Box 1, Jefferson, OH  44047 (For Defendant-Appellant).


COLLEEN MARY O'TOOLE, J.

{¶1}   Appellant, Brianna Bernard, appeals from the October 5, 2016 judgments of the Ashtabula County Court of Common Pleas, convicting and sentencing her for aggravated robbery, aggravated burglary, felonious assault, and kidnapping following a jury trial.  For the reasons set forth below, this court finds appellant was denied a fair trial because of the admission of prejudicial other acts evidence pursuant to Evid.R.

404(B). This court further finds the evidence presented is not sufficient to support appellant's convictions as a matter of law. Therefore, we reverse the trial court's judgments and vacate appellant's convictions.

{¶2} On September 25, 2014, appellant was indicted by the Ashtabula County Grand Jury on ten counts involving a home invasion with three separate victims, Heather Marx, Matthew Carnes, and Abigail Grubbs: three counts of aggravated robbery (counts one through three), felonies of the first degree, in violation of R.C. 2911.01(A)(1); one count of aggravated burglary (count four), a felony of the first degree, in violation of R.C. 2911.11(A)(2); three counts of felonious assault (counts five through seven), felonies of the second degree, in violation of R.C. 2903.11(A)(2); and three counts of kidnapping (counts eight through ten), felonies of the first degree, in violation of R.C. 2905.01(A)(2). Each count carried a firearm specification. Appellant was represented by counsel, pleaded not guilty to all charges, and waived her right to a speedy trial.

{¶3} On November 2, 2015, appellee, the state of Ohio, filed a notice of intention to use other acts evidence pursuant to Evid.R. 404(B) and R.C. 2945.59 to show appellant's identity, knowledge, absence of mistake, common scheme or plan, and modus operandi. Specifically, the state sought to present evidence of other home invasions in which appellant was the getaway driver.

{¶4} In response, appellant filed a motion to exclude any evidence related to other crimes, wrongs, or acts. Appellant asserted that the other acts evidence contains many significant factual differences from the instant case, is very highly prejudicial to her, and undermines her rights to due process and a fair trial.

2

{¶5} The trial court subsequently found the evidence to be admissible and permitted the state to use other acts evidence during the jury trial.

{¶6} On January 19, 2016, the state filed a motion for joinder, Case Nos. 2014 CR 00564 (involving appellant) and 2014 CR 00571 (involving appellant's co-defendant Marcus Lashley). Appellant and co-defendant Lashley filed separate responses. In appellant's response, she indicated that undue prejudice would result from joinder because she and her co-defendant would be asserting antagonistic defenses which are mutually exclusive to each other, and that the defenses would likely differ to an extent that would confuse the jury at appellant's expense. Nevertheless, following a hearing, the trial court ordered the matters be joined into a single action for purposes of trial.

{¶7} A jury trial commenced on September 27, 2016. The state submitted 74 exhibits and the following ten witnesses testified on its behalf: Officers Thomas Simcich, Chris Mackensen, and Denny Moore with the Conneaut Police Department ("CPD"); Detective Michael Sullivan with the CPD; Detective William Felt, Jr. with the Ashtabula City Police Department ("ACPD"); Lieutenant Dennis Dibble with the ACPD; Special Agent Edward Lulla with the Ohio Bureau of Criminal Investigation ("BCI"); forensic scientist Emily Feldenkris with BCI; Heather Marx, a victim; and Alyssa Hill, Highland Place Apartments property manager.

{¶8} Heather Marx and her young son lived at Highland Place Apartments, 446 West Main Road, Apartment 101, Conneaut, Ohio. Matthew Carnes is Marx's boyfriend. Abigail Grubbs is Marx's friend and babysitter to her son. On January 26, 2014, Marx was in her apartment with her son, her son's friend, and Grubbs. Marx later left to pick up Carnes.

3

{¶9} When they returned, the apartment was dark. Marx walked to the bedroom and was hit on the head several times by one of two assailants, who were wearing masks. She passed out. When Marx awoke, she had been tied up with belts and the men were gone. Her phone and car keys were missing. Carnes and Grubbs were also injured.[1]

{¶10} Officer Simcich was dispatched to Marx's apartment regarding a report of a home invasion by two masked African American men with handguns. Upon his arrival, Officer Simcich observed Marx with a laceration on her forehead and blood on her hair and clothing. Marx was crying and extremely distraught. Marx indicated she was assaulted by one of the two masked men. The apartment was in disarray.

{¶11} On cross-examination, Officer Simcich testified that he had to be "buzzed into" Marx's apartment building. He also stated there were no signs of forced entry.

{¶12} Officer Mackensen provided back-up assistance. He confirmed the condition of the apartment occupants. While outside, Officer Mackensen noticed footprints in the snow which he followed across Route 20 to 445 West Main. The trail led to a parking lot with some tire tracks and what appeared to be the contents of an ashtray emptied on the ground. Officer Mackensen secured the scene and pointed out the potential evidence to Detective Sullivan, who arrived about 30 minutes later. A cigarette butt and a napkin cutting were sent for testing. Appellant was later contacted and gave a DNA sample. Forensic scientist Feldenkris with BCI confirmed the DNA profile from the cigarette butt and napkin cutting was consistent with appellant.

---

1. Neither Carnes nor Grubbs testified at trial.

4

{¶13} On cross-examination, Officer Mackensen indicated the footprints in the snow were not tied to any person or pair of shoes. He also said no one saw who made the footprints.

{¶14} Alyssa Hill, the apartment property manager, authenticated a video of the outside area of the apartment building which was played in open court. Detective Sullivan pointed out that the video showed two individuals entering the apartment, a vehicle pulling into the parking lot, and two individuals leaving the apartment and running away.

{¶15} On cross-examination, Detective Sullivan testified it appeared the two individuals entered the apartment building by merely opening the door, which meant that someone in one of the twelve units had "buzzed" them in. No indication of the identity of the two individuals, including gender and race, was able to be made from the video.

{¶16} The next day, January 27, 2014, Detective Felt was dispatched to the scene of a double murder on Norman Avenue, Ashtabula, Ohio. Footprints in the snow at this crime scene were followed. Some torn clothing and blood from the top of a fence were found. Special Agent Lulla with BCI was dispatched. BCI confirmed the DNA profile of the blood belonged to co-defendant Lashley. Also found and recovered was a knit hat. BCI confirmed the DNA profile of the hat belonged to Taquan Mathers.

{¶17} During the investigation of the Norman Avenue murders, appellant was implicated as a suspect in that case as well as in another incident on Hiawatha Avenue, Ashtabula, Ohio. Authorities were looking for a silver four-door SUV thought to be

involved in the Norman Avenue murders. A vehicle of a similar make, model, and color registered to appellant's mother, Michelle Bernard, was located but never searched.

{¶18} At the close of the state's case, appellant's counsel moved for an acquittal pursuant to Crim.R. 29. The trial court dismissed counts one and three (aggravated robbery), five and seven (felonious assault), and eight and ten (kidnapping) relating to the alleged victims, Matthew Carnes and Abigail Grubbs.

{¶19} Appellant did not testify and presented no witnesses. Appellant's counsel renewed its Crim.R. 29 motion for acquittal regarding the remaining counts, which was overruled by the trial court.

{¶20} Following trial, the jury found appellant guilty on count two (aggravated robbery), count four (aggravated burglary), count six (felonious assault), and count nine (kidnapping) relating to the victim, Heather Marx. The jury found appellant not guilty of any of the firearm specifications.

{¶21} Co-defendant Lashley was acquitted of all charges.

{¶22} The trial court merged appellant's counts two and four for purposes of final conviction and sentencing. Appellant was sentenced to five years in prison on count four, three years on count six, and five years on count nine. Counts four and nine were ordered to run concurrently with one another and consecutively with count six for a total prison sentence of eight years, with 211 days of credit for time served. The court advised appellant that upon her release from prison, she will have a period of post-release control for five years. Appellant filed a timely appeal and asserts the following three assignments of error:[2]

---

2. Appellant waived oral argument and submitted an appellate brief on May 8, 2017. On July 28, 2017, the state filed a motion to file brief instanter which this court granted.

6

**{¶23}** "[1.] The trial court erred to the prejudice of Appellant when it allowed Appellee to submit other bad acts evidence pursuant to Evid.R. 404(B).

**{¶24}** "[2.] The verdict is against the manifest weight of the evidence and the sufficiency of the evidence.

**{¶25}** "[3.] The trial court erred when entering inconsistent verdicts against Appellant."

**{¶26}** In her first assignment of error, appellant argues the trial court erred in allowing the state to submit other bad acts evidence pursuant to Evid.R. 404(B).

**{¶27}** "[A]ppellate review of a trial court's decision regarding the admissibility of other crimes, wrongs, or acts under Evid.R. 404(B) is conducted under an abuse-of-discretion standard." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶1. The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto,* 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland,* 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

**{¶28}** Evid.R. 404(B) states in part:

**{¶29}** "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**{¶30}** Similarly, R.C. 2945.59 provides:

{¶31} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

{¶32} "Evidence of other acts under R.C. 2945.59 and Evid.R. 404(B) is to be construed against admissibility. * * * This is because '(t)he average individual is prone to much more readily believe that a person is guilty of the crime charged if it is proved to his satisfaction that the defendant has committed a similar crime.' * * *'" (Footnote citations omitted.) *State v. Burns*, 11th Dist. Lake No. 2000-L-189, 2002-Ohio-3585, ¶16.

{¶33} "'[C]ourts have long recognized the danger of admitting other-acts evidence. In *United States v. Phillips* (1979), 599 F.2d 134, 136, the Sixth Circuit Court of Appeals stated as follows: 'Two concerns are expressed by the first sentence of (Fed.R.Evid.) 404(b): (1) that the jury may convict a "bad man" who deserves to be punished—not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes, he probably committed the crime charged.' As cautioned by the Ohio Supreme Court in *State v. Lowe* (1994), 69 Ohio St.3d 527, * * *, 'we therefore must be careful (* * *) to recognize the distinction between evidence which shows that a defendant is the *type* of person who might commit a particular crime and evidence

8

which shows that a defendant *is* the person who committed a particular crime.' (Emphasis sic.) *Id.* at 530. This danger is particularly high when the other acts are very similar to the charged offense * * *.'" *Lyndhurst v. Smith*, 8th Dist. Cuyahoga No. 97045, 2012-Ohio-2920, ¶26, quoting *State v. Williams*, 195 Ohio App.3d 807, 2011-Ohio-5650, ¶37-38 (8th Dist.) (en banc).

**{¶34}** "In addition, other-acts evidence is subject to the limitations provided in Evid.R. 402 and 403; therefore, the proffered evidence must be relevant and its probative value must outweigh its potential for unfair prejudice." *Smith, supra,* at ¶27.

**{¶35}** In determining whether to permit other acts evidence to be admitted, trial courts should conduct a three-step analysis set forth in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695: "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403." *Id.* at ¶20.

**{¶36}** In this case, as stated, on November 2, 2015, the state filed a notice of intention to use other acts evidence pursuant to Evid.R. 404(B) and R.C. 2945.59 to show appellant's identity, knowledge, absence of mistake, common scheme or plan, and modus operandi. Specifically, the state sought to present evidence of other home

invasions in which appellant was the getaway driver. The state indicated these other acts directly relate to appellant's possible defense that she was unaware of what criminal activity was occurring inside of the homes. The state's motion alleged the following other acts: (1) on January 27, 2014 a double murder by two masked African American men occurred on Norman Avenue, Ashtabula, Ohio; (2) the DNA of appellant's co-defendant, Marcus Lashley, was found on a glove inside the Norman Avenue home and on a blood spear on an outside fence; (3) Lashley and Taquan Mathers implicated appellant as the driver and video evidence reveals appellant was in the area around the time of the homicides; and (4) on November 25, 2013, Edward Smith committed a double homicide on Hiawatha Avenue, Ashtabula, Ohio, in which appellant was charged in that case with complicity, pleaded guilty to obstructing justice, and had indicated to police that she dropped Smith off at the house and picked him up afterward.[3]

{¶37} In response, appellant filed a motion to exclude any evidence related to other crimes, wrongs, or acts. Appellant asserted that the other acts evidence contains many significant factual differences from the instant case, is very highly prejudicial to her, and undermines her rights to due process and a fair trial.

{¶38} The trial court subsequently found the evidence to be admissible and permitted the state to use other acts evidence during the jury trial.

{¶39} At trial, appellant's counsel renewed her objection to allowing the introduction of other acts evidence. Appellant's counsel stated the following:

_____

3. No evidence of allegations three and four against appellant was presented during trial.

**{¶40}** "I think it's going to be confusing to the Jury to be discussing a case in which [appellant] has already been convicted and a case for which she was never charged. There are several differences between the cases, the parties involved, the conduct that is alleged in each case." (Jury Trial T.p. 252).

**{¶41}** The trial court disagreed with appellant's counsel and permitted the other acts evidence.

**{¶42}** As to the first step of the *Williams* test, Detective Felt's testimony was not relevant to the crimes charged in this case. As stated, the following day after the incident in the case sub judice, a double murder occurred on Norman Avenue. Detective Felt was dispatched to the scene. Footprints in the snow were followed. Some torn clothing and blood from the top of a fence were found. BCI confirmed the DNA profile of the blood belonged to co-defendant Lashley. Also found and recovered was a knit hat. BCI confirmed the DNA profile of the hat belonged to Taquan Mathers.

**{¶43}** During the investigation of the Norman Avenue murders, appellant was implicated as a suspect in that case as well as in another incident on Hiawatha Avenue. Authorities were looking for a silver four-door SUV thought to be involved in the Norman Avenue murders. A vehicle of a similar make, model, and color registered to appellant's mother was located but never searched.

**{¶44}** As to the second and third steps of the *Williams* test, the evidence presented went to proving appellant's character and to showing that the conduct was in conformity with that character. The probative value of the other acts evidence was substantially outweighed by the danger of unfair prejudice.

11

{¶45} The jury heard evidence of other horrific crimes, but not appellant's acts. The only evidence presented allegedly tying appellant to the crimes in the January 26, 2014 case sub judice was that the DNA profile from the cigarette butt and napkin cutting, found in a nearby parking lot to Heather Marx's apartment, was consistent with appellant. The state presented no other evidence to the jury about any other involvement with respect to appellant in this case. Again, the trail in the snow led to a parking lot with some tire tracks and what appeared to be the contents of an ashtray emptied on the ground. The footprints in the snow were not tied to any one person or pair of shoes. Also, no one saw who made the footprints. Appellant did not present the anticipated defense of ignorance.

{¶46} The next day, in another case, Detective Felt was dispatched to the scene of a double murder on Norman Avenue. Footprints in the snow at that crime scene were followed. Some blood from the top of a fence was found, matching the DNA profile of co-defendant Lashley. Also found and recovered was a knit hat, matching the DNA profile of Taquan Mathers.

{¶47} During the investigation of the Norman Avenue murders, appellant was implicated as a suspect in that case as well as in another incident on Hiawatha Avenue. Authorities were looking for a silver four-door SUV thought to be involved in the Norman Avenue murders and seen on surveillance video. A vehicle of a similar make, model, and color registered to appellant's mother was located but never searched. No evidence tied that vehicle to the scene of any crime.

{¶48} Following trial, co-defendant Lashley (one of two alleged principal perpetrators) was acquitted of all charges. However, the jury found appellant (the

alleged getaway driver) guilty on count two (aggravated robbery), count four (aggravated burglary), count six (felonious assault), and count nine (kidnapping) relating to the victim, Heather Marx.

{¶49} Although the state filed a notice of intention to use other acts evidence pursuant to Evid.R. 404(B) and R.C. 2945.59 to show appellant's identity, knowledge, absence of mistake, common scheme or plan, and modus operandi, the evidence went to showing appellant's bad character and that she acted in conformity therewith. This evidence comes squarely within the prohibition of Evid.R. 404(B) because it portrayed appellant as a bad person who deserves to be punished, thereby likely suggesting to the jury that because the accused committed or may have committed other acts/crimes, she probably committed these acts/crimes too. *See Smith, supra,* at ¶32. The evidence was personally damaging and "reaches the essence of the Evid.R. 404(B) prohibition because it relies on the very inferential pattern that '[s]he did it before, so [s]he must have done it again.'" *Id.* at ¶33, quoting *State v. Nucklos,* 171 Ohio App.3d 38, 2007-Ohio-1025, ¶87-88 (2d Dist.).

{¶50} It is this court's position that "we are loath to endorse inference-stacking as a means to upholding a conviction." *State v. Armstrong*, 11th Dist. Portage No. 2015-P-0075, 2016-Ohio-7841, ¶28. "The rule against inference-stacking essentially forbids the drawing of an inference from evidence, which is too uncertain or speculative or which raises merely a possibility or conjecture. While reasonable inferences may be drawn from the facts and conditions established, they cannot be drawn from facts or conditions merely assumed." *Id.* at ¶23; *see also State v. Payne,* 11th Dist. Ashtabula No. 2014-A-0001, 2014-Ohio-4304, ¶23.

13

**{¶51}** The trial court pointed out that "you can't try a case on an inference." (Jury Trial T.p. 636). However, the record reflects the state added an inference upon an inference to tie appellant to the crimes in this case. The state promised that, not only would it show appellant acted as the getaway driver for the principal perpetrators in the January 26, 2014 crimes at Heather Marx's apartment, it would also show that appellant had acted as the getaway driver for other crimes. The state inferred appellant was in the car, inferred that the car was hers or her mother's, inferred that she was the getaway driver, and inferred she acted with the same criminal intent as the principals.[4] Based on the facts presented in this case, the state improperly stacked inferences. *See Armstrong, supra,* at ¶23, 28; *Payne, supra,* at ¶23.

**{¶52}** In light of all of the foregoing, we conclude appellant was denied a fair trial because the trial court erred in allowing the state to introduce other acts evidence in violation of Evid.R. 404(B) because it was used to prove appellant's character to show that she acted in conformity therewith. This error was prejudicial to appellant as there was not overwhelming independent evidence of her guilt.

**{¶53}** Appellant's first assignment of error is with merit.

**{¶54}** In her second assignment of error, appellant contends the verdict is against the manifest weight and the sufficiency of the evidence.

**{¶55}** Although we found merit with the first assignment of error, justifying a remand for a new trial, we must proceed to analyze whether there was sufficient evidence to support the trial court's denial of appellant's motion for acquittal. If there was insufficient evidence, the convictions would be vacated. *See State v. Rose*, 11th Dist. Lake No. 2014-L-086, 2015-Ohio-2607, ¶32.

---

4. Again, co-defendant Lashley was acquitted of all charges.

14

{¶56} A challenge to the sufficiency of the evidence raises a question of law as to whether the prosecution met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997); *see also State v. Windle*, 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "In reviewing the record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Smith*, 80 Ohio St.3d 89, 113 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979); *see also State v. Troisi*, 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.).

{¶57} When conducting this analysis, appellate courts are to look at the actual evidence admitted at trial, both admissible and inadmissible. *Rose*, *supra*, at ¶34, citing *State v. Dengg*, 11th Dist. Portage No. 2008-P-0063, 2009-Ohio-4101, ¶68, citing *Lockhart v. Nelson*, 488 U.S. 33, 34 (1988). Thus, for purposes of this analysis, we consider the inadmissible other acts evidence.

{¶58} "[C]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Fasline*, 11th Dist. Trumbull No. 2014-T-0004, 2015-Ohio-715, ¶39, citing *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), citing *Jenks, supra*, paragraph one of the syllabus. "Circumstantial evidence has been defined as testimony not grounded on actual personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established." *State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001, 2014-Ohio-4304, ¶22, citing *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988). An inference is "'a

15

conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven.'" *State v. Nevius*, 147 Ohio St. 263, 294 (1947), quoting *Eusel v. Lumber Ins. Co. of New York,* 88 Ohio St. 269, 282 (1913). "It consequently follows that 'when circumstantial evidence forms the basis of a conviction, that evidence must prove collateral facts and circumstances, from which the existence of a primary fact may be rationally inferred according to common experience." *State v. Armstrong*, 11th Dist. Portage No. 2015-P-0075, 2016-Ohio-7841, ¶22, quoting *Windle*, *supra*, at ¶34.

**{¶59}** A conviction, however, may not be based upon the "stacking of inferences." *Payne, supra,* at ¶23. "When an inference, which forms the basis of a conviction, is drawn solely from another inference and that inference is not supported by any additional facts or inferences drawn from other established facts, the conviction is improper." *Id.*; *see also State v. Maynard*, 10th Dist. Franklin No. 11AP-697, 2012-Ohio-2946, ¶27. "The rule against inference-stacking essentially forbids the drawing of an inference from evidence, which is too uncertain or speculative or which raises merely a possibility or conjecture. While reasonable inferences may be drawn from the facts and conditions established, they cannot be drawn from facts or conditions merely assumed." *Armstrong, supra,* at ¶23.

**{¶60}** We conclude the state produced adequate circumstantial evidence upon which the jury could reasonably infer that the principal perpetrators fled the apartment complex on foot to a nearby parking lot and that they fled the parking lot in a vehicle. However, the state failed to produce adequate evidence to permit the further inference that appellant was complicit in the crimes that were committed by the principals that

night. In order to reach that conclusion, the jury was required to assume that the cigarette butt and napkin found in the parking lot originated from the vehicle in which the perpetrators fled; that there was a third party in the vehicle acting as a getaway driver; that the driver was appellant; and that appellant acted with the same criminal intent as the principals. This resulted in convictions based upon impermissible inference-stacking.

{¶61} Although the jury may have speculated, based on the inadmissible other acts evidence, that appellant was the getaway driver on the night in question, mere speculation is not enough. *Armstrong, supra,* at ¶28 ("Upon analysis, appellant's conviction[s] could only be based on an inference which was dependent *not* upon an established fact, but upon another inferential assumption. Although reasonable inferences may be drawn from evidence, it is the state's burden to present evidence on each element of the charged crime from which those inferences may be drawn. It must be borne in mind that proof must be sufficient for the jury to find guilt beyond a reasonable doubt. Thus, although the state need not exclude every reasonable theory of innocence to sustain a conviction, we are loath to endorse inference-stacking as a means to upholding a conviction.") (Emphasis sic.) *See also State v. Marhefka*, 11th Dist. Ashtabula No. 2016-A-0013, 2016-Ohio-7158, ¶13-26.

{¶62} As a result, even if believed, the evidence presented is not sufficient to support appellant's convictions as a matter of law and, therefore, appellant's argument that the jury verdict was against the manifest weight of the evidence is moot.

{¶63} Appellant's second assignment of error is with merit.

17

{¶64} In her third assignment of error, appellant alleges the trial court erred in entering inconsistent verdicts.

{¶65} Based on our disposition of appellant's first and second assignments of error, her remaining assignment is moot and will not be addressed in this opinion. App.R. 12(A)(1)(c).

{¶66} For the foregoing reasons, appellant's first and second assignments of error are well-taken, and her third assignment of error is moot. The judgments of the Ashtabula County Court of Common Pleas are reversed and appellant's convictions are hereby vacated.


TIMOTHY P. CANNON, J., concurs with a Concurring Opinion,

CYNTHIA WESTCOTT RICE, J., concurs in part and dissents in part, with a Dissenting Opinion.

_____


TIMOTHY P. CANNON, J., concurring.

{¶67} I concur with the majority's conclusion that the trial court erred when it allowed the state to introduce "other acts" evidence in violation of Evid.R. 404(B) because it was used to prove appellant's character to show she acted in conformity therewith. This error was prejudicial to appellant, as there was not overwhelming independent evidence of her guilt.

{¶68} I also agree that appellant's convictions should be vacated. I write separately to address the State's brief, which offers little accurate defense to appellant's

18

contentions and takes great liberty with a recitation of the "other acts" evidence adduced at trial. The State contends the main purpose of Detective Felt's testimony, over objection, was "to give some sense of context to the DNA evidence which was recovered." His testimony did no such thing. Detective Felt testified there was a double homicide on Norman Avenue and was asked if officers were able to identify any vehicle that may have been involved. He responded: "To an extent, yes." They were looking for a "silver four-door SUV." When defense counsel objected, the trial court overruled the objection, stating: "All he said is they were looking for that type of a car. There's probably 10,000 silver four-door SUVs."

{¶69} The trial court allowed the detective to testify as to how he followed up on that lead. Detective Felt indicated he discovered that appellant's mother owned a silver four-door SUV and that appellant had "access" to it. There was no testimony, however, that appellant was seen driving that vehicle near the scene of the Norman Avenue homicides or that she *ever* drove that vehicle, let alone as a getaway driver.

{¶70} The State then attempted to elicit testimony about another murder, closely related in time, on Hiawatha Avenue. When the detective was asked how appellant was involved in that case, he began to respond, stating she was "identified as the driver of the - -"; whereupon defense counsel objected. The objection was sustained, and no further testimony was elicited about this incident.

{¶71} The State contends in its brief that appellant was "implicated" as the getaway driver in these homicides. That is a complete misrepresentation of the testimony at trial.

{¶72} At the close of the State's case, appellant's Crim.R. 29 motion for acquittal should have been granted. Even considering the inadmissible "other acts" evidence, there was insufficient evidence to support appellant's convictions. As a result, I agree the manifest weight claim is moot.

_____

CYNTHIA WESTCOTT RICE, J., concurs in part and dissents in part, with a Dissenting Opinion.

{¶73} While I agree that the trial court erred in allowing the state to introduce the other acts evidence, I would reverse the matter and remand it for a new trial, pursuant to *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593.

{¶74} In *Brewer*, the Supreme Court held "[w]hen evidence admitted at trial is sufficient to support a conviction, but on appeal, some of that evidence is determined to have been improperly admitted, the Double Jeopardy Clauses of the United States and Ohio Constitutions will not bar retrial." *Id.* at syllabus. The Court noted that, in *Lockhart v. Nelson*, 488 U.S. 33 (1988), the United States Supreme Court held that "'where evidence offered by the State and admitted by the trial court - whether erroneously or not - would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial.'" *Brewer*, *supra*, at ¶17, quoting *Lockhart*, *supra*, at 35. The Court in *Lockhart* acknowledged that, while it had previously held that double jeopardy bars retrial when an appellate court reverses a conviction based only upon evidential insufficiency, it distinguished that holding on the basis that such a reversal is equivalent to an acquittal. *Id.* at 39. In distinguishing between appellate court reversals based on

20

ordinary "trial errors," the Court observed: "While the former is in effect a finding 'that the government has failed to prove its case' against the defendant, the latter 'implies nothing with respect to the guilt or innocence of the defendant,' but is simply 'a determination that [he] has been convicted through a judicial *process* which is defective in some fundamental respect.'" *Id.* at 40, quoting *Burks v. United States*, 437 U.S. 1, 15 (1978).

{¶75}  With these points in mind, I would hold the other acts evidence should have been excluded; because, however, the evidence would have been sufficient when considered in light of the improperly admitted other acts evidence, I would also hold, pursuant to *Brewer* and *Lockhart*, that the matter must be reversed and remanded for a new trial.

{¶76}  I accordingly concur in part and dissent in part.