[Cite as *State v. Tarbet*, 2022-Ohio-1005.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2021-L-014** |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the Court of Common Pleas |
| DARLENE TARBET, | Trial Court No. 2019 CR 000595 |
| Defendant-Appellant. | |

**O P I N I O N**

Decided: March 28, 2022
Judgment: Affirmed

*Charles E. Coulson,* Lake County Prosecutor, and *Kristi L. Winner,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Mandy J. Gwirtz,* Mandy Gwirtz, LLC, 20050 Lakeshore Boulevard, Euclid, OH 44123 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Darlene Tarbet, appeals the December 29, 2020 Judgment Entry of the Lake County Court of Common Pleas sentencing her to two years community control for Tampering With Records and Petty Theft. For the reasons set forth herein, the judgment is affirmed.

{¶2} The facts underlying this case are generally undisputed. Ms. Tarbet was contracted with the City of Kirtland (the "City") as a massage therapist for Kirtland Senior Center. Members of the senior center would schedule appointments with Ms. Tarbet and

were charged $40 for an hour-long massage and $55 for a 90-minute massage. The members usually paid the City directly; the City would subsidize the massage and actually pay Ms. Tarbet $70 for an hour massage and $100 for a 90-minute massage. In order to get paid for her services, Ms. Tarbet submitted invoices to the City that indicated the massage service and length of time. In 2019, the contract she signed with the City called for Ms. Tarbet to be paid "$1.16 per minute, per participant, per scheduled date." However, she only ever billed in 60 or 90-minute increments and was only ever paid $70 or $100 for 60 or 90-minute massages, respectively.[1]

{¶3} In April 2019, Jenna Hull, the director of the senior center, believed Ms. Tarbet was billing for massages that were not performed. Specifically, Ms. Hull questioned whether Sheila Strauss, Ms. Tarbet's mother and a member at the senior center, was receiving services from Ms. Tarbet. Ms. Hull reviewed camera footage to determine whether Ms. Strauss would physically appear in the building on a day that an invoice was submitted. There is no dispute that Ms. Strauss was not physically present on four of the dates relevant to this case, and that Ms. Strauss was not in the massage room for the full hour on the two remaining relevant dates. In her defense, Ms. Tarbet testified that when she would have a cancellation, she would perform distance Reiki on her mother via phone, and that when her mother was present, her mother's health problems prevented her from laying down for the full hour.

{¶4} Ms. Tarbet submitted the invoices to the City for these sessions and was paid. She contends that these were valid invoices and that distance Reiki falls under the

---

1. Sixty minutes at $1.16 per minute equates to $69.60, and 90 minutes at $1.16 per minute equates to $104.40. Thus, in practice, Ms. Tarbet was never paid exactly by the minute.

2

umbrella of massage therapy; the state asserts that this was beyond the scope of the services for which Ms. Tarbet was contracted.

{¶5} Ms. Tarbet was initially indicted on seven counts of Tampering With Records, felonies of the third degree, in violation of R.C. 2913.42(A)(1), and seven counts of Petty Theft, misdemeanors of the first degree, in violation of R.C. 2913.02(A)(3). Prior to trial, the state dismissed one count of Tampering With Records and one count of Petty Theft, both pertaining to April 29, 2019.

{¶6} The jury ultimately found Ms. Tarbet not guilty on two counts of Tampering With Records and two counts of Petty Theft, which related to the dates on which Ms. Strauss was in the building at the time of the billed massage. She was found guilty on the remaining eight counts. The court sentenced Ms. Tarbet to two years of community control on each offense, to be run concurrently, ordered to serve 60 days of electronically monitored house arrest, 100 hours of community services, and $120 in restitution.

{¶7} Ms. Tarbet now appeals, assigning three errors for our review. We address her second assigned error first, which states:

{¶8} The trial court erred to the prejudice of the defendant-appellant in denying her motion for acquittal made pursuant to Crim.R. 29(A).

{¶9} "[W]hen an appellant makes a Crim.R. 29(A) motion for acquittal, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶18. "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting Black's Law Dictionary (6 Ed.1990) 1433. "An appellate court reviewing the

3

Case No. 2021-L-014

sufficiency of the evidence examines the evidence admitted at trial and determines whether, after viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Ross*, 11th Dist. Portage No. 2016-P-0060, 2018-Ohio-452, ¶34, citing *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

**{¶10}** In this case, Ms. Tarbet was convicted of Tampering With Records and Petty Theft.  R.C. 2913.42(A)(1), Tampering with Records, states:

> **{¶11}** (A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:
>
> **{¶12}** (1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record.
>
> **{¶13}** R.C. 2913.02(A)(3), Theft, states:
>
> **{¶14}** (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * (3) By deception.

**{¶15}** We focus our review on the four dates relating to the eight counts of which the jury found Ms. Tarbet guilty.

**{¶16}** The undisputed testimony shows that Ms. Strauss was not in the building on the four relevant dates, as corroborated by the video records the state submitted, that Ms. Tarbet submitted an invoice and was paid for an hour of service on each of the four dates.  The only element in dispute on these counts is whether Ms. Tarbet had the requisite intent, i.e., that she acted with purpose to defraud or knowing that she was facilitating a fraud, and that she acted with purpose to deprive the owner of the property.

4

{¶17} To this end, the state presented the testimony of Ms. Hull, who is herself an advanced Reiki practitioner. She testified that an advanced or master Reiki practitioner can perform distance healing, and that while massage, Reiki, and reflexology were offered at the senior center at this time, Tina DiCillo was the contractor who performed Reiki, while Ms. Tarbet was contracted to do massage therapy. Ms. Hull also stated that there is a different pay structure for Reiki. In other words, according to Ms. Hull, if Ms. Tarbet was providing distance Reiki during these times, it was a valid practice, but it was not within the scope of her contract as a massage therapist, and therefore not compensable. Ms. Tarbet argued that Reiki falls under the umbrella of massage therapy.

{¶18} Ms. Tarbet's 2019 contract with the senior center states that Ms. Tarbet is contracted to perform massage therapy. As an independent contractor, "[t]he City is interested in the results achieved by the Instructor only, and the conduct, control, and completion of the work as set forth in Exhibit A will lie solely with the Instructor." However, no Exhibit A was included. Nevertheless, the contract specifically states that "[u]nless otherwise permitted by the Recreation and Senior Coordinator, the Instructor will conduct all programs in the Spa and Wellness room at the Kirtland Community Center * * *."

{¶19} The state presented video recordings of the senior center and the corresponding invoices for, inter alia, each of the four dates corresponding to the eight counts on which Ms. Tarbet was ultimately found guilty. Specifically, on February 22, Ms. Tarbet billed for a 60-minute massage with Ms. Strauss from 9 a.m. to 10 a.m. As seen on the video, Ms. Tarbet is in the massage room without a client from 9:00 a.m. to 9:42 a.m., then she leaves the building and returns just before 10:00 a.m. She bills for an hour. On March 15, Ms. Strauss was scheduled from 10:15 to 11:15 a.m. During that

5

time, Ms. Tarbet enters the massage room without a client physically present and stays there from about 10:15 a.m. to 10:46 a.m. She billed for a 60-minute massage. On April 1, Ms. Tarbet can be seen leaving the senior center before 6 p.m. but she billed for a massage starting at 6:45 p.m. Finally, on April 15, Ms. Strauss was scheduled from 5:30 p.m. to 6:30 p.m. At that time Ms. Tarbet can be seen walking the halls of the senior center and leaving the building briefly. She takes another client around 6:10 p.m., despite billing for Ms. Strauss from 5:30 p.m. to 6:30 p.m.

{¶20} Taken together, this evidence suggests that Ms. Tarbet had a pattern of billing for services either not performed or not performed according to her contract. Ms. Tarbet's contract did not expressly permit her to perform Reiki. There is no evidence to suggest that Ms. Tarbet did not know that another practitioner at the senior center was the hired Reiki instructor or that Ms. Tarbet practiced Reiki with any other client aside from her mother. Moreover, when confronted by Ms. Hull, Ms. Tarbet does not mention distance Reiki, but lies about a change in schedule. Considering the foregoing, we find that a juror could reasonably believe that she knew her contract did not permit her to be paid for practicing Reiki.

{¶21} Moreover, even if Ms. Tarbet's contract permitted her to bill for Reiki services, her contract expressly stated the services must be performed in the massage room at the senior center. On April 1, Ms. Tarbet was not even in the building for the hour she billed. And on April 15, she bills two different clients for overlapping time slots.

{¶22} After careful consideration of the evidence presented at trial, we find that the state presented evidence sufficient of each element of each offense for the matter to be set before the jury and that a reasonable juror could believe that Ms. Tarbet's actions

6

were intended to be fraudulent. Accordingly, we cannot find the trial court erred in overruling Ms. Tarbet's Crim.R. 29 motion.

{¶23} Accordingly, Ms. Tarbet's second assignment of error is without merit.

{¶24} Her first states:

{¶25} The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

{¶26} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins, supra,* at 387, citing *State v. Robinson*, 162 Ohio St. 486 (1955). "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis omitted.). *Thompkins, supra,* quoting Black's, *supra*, at 1594.

{¶27} When reviewing the manifest weight of the evidence, "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs

7

heavily against the conviction.'" *Thompkins, supra, quoting State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶28}** "Nevertheless, '[t]he trier of fact is free to believe or disbelieve all or any of the testimony' and 'is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible.' * * * 'Consequently, although an appellate court must act as a 'thirteenth juror' when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility.'" *State v. Vanover*, 11th Dist. Geauga No. 2020-G-0268, 2021-Ohio-3172, ¶33, quoting *State v. Haney*, 11th Dist. Lake No. 2012-L-098, 2013-Ohio-2823, ¶43.

**{¶29}** As discussed under her second assigned error, a jury could reasonably find, and in fact did find, that Ms. Tarbet intended to be paid for services she did not perform according to her contract. Ms. Tarbet's explanation, that she was performing distance Reiki on Ms. Strauss during the times for which she submitted invoices and that she believed she was permitted to bill for Reiki services, is not supported by the record. Though her contract permitted her the autonomy to complete her work as she saw fit, there was no evidence to suggest that Ms. Tarbet routinely performed Reiki on any client other than her mother. At the very least, she was not performing an hour of services or performing them in her assigned massage room at the senior center.

**{¶30}** Moreover, given that this was a consistent practice for Ms. Tarbet, that she knew her contract required the work to be performed in the massage room at the senior center, and that she did not practice Reiki with any other client, the evidence weighs against a finding that Ms. Tarbet honestly believed she was permitted to bill for Reiki

8

Case No. 2021-L-014

services or that she made mistakes in billing for services not performed. Moreover, when confronted, Ms. Tarbet did not answer honestly and attempted to cover up her actions. Thus, we cannot say her convictions were against the manifest weight of the evidence.

{¶31} Thus, Ms. Tarbet's first assignment of error is without merit.

{¶32} Her third states:

{¶33} The trial court erred to the prejudice of the defendant-appellant by failing to exclude testimony regarding the defendant-appellant's prior bad acts, in violation of the defendant-appellant's due process rights and rights to fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution.

{¶34} "[A]ppellate review of a trial court's decision regarding the admissibility of other crimes, wrongs, or acts under Evid.R. 404(B) is conducted under an abuse-of-discretion standard." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶1. The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *State v. Bernard*, 11th Dist. Ashtabula No. 2016-A-0063, 2018-Ohio-351, ¶27, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.).

{¶35} Evid.R. 404(B) states in pertinent part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This so called "other-acts evidence" is also "'subject to the limitations provided in Evid.R. 402 and 403; therefore, the proffered evidence must be relevant and

9

its probative value must outweigh its potential for unfair prejudice.'" *Bernard, supra,* at ¶34, quoting *Lyndhurst v. Smith*, 8th Dist. Cuyahoga No. 97045, 2012-Ohio-2920, ¶27.

**{¶36}** Though the state dropped two counts pertaining to events occurring April 29, 2019, the day that Ms. Tarbet was caught, the state presented substantial evidence of the events of that day. Ms. Tarbet objected; the state argued they showed her modus operandi, and the start of the investigation, and therefore met the exception provided by Evid.R. 404(B). The trial court overruled the objection, stating, "this is how the whole investigation started and is necessary, essential evidence to be presented as to why this led to where it went." During closing arguments, the state commented, "[t]his didn't happen once, * * * twice, * * * [or] three times. It happened six. Seven times if you count April 29th * * *."

**{¶37}** Addressing first the state's closing comments, while these comments were inappropriate given that the state had dismissed the count pertaining to April 29, we do not agree that they created an unfair prejudice against Ms. Tarbet. The court instructed the jury that closing arguments were not evidence to be considered. The jury is presumed to have followed the instructions given by the trial court. *State v. Sanders*, 11th Dist. Lake No. 2011-L-024, 2012-Ohio-400, ¶54.

**{¶38}** Moreover, April 29 was the day that Ms. Hull confronted Ms. Tarbet. In that conversation, Ms. Tarbet lied about which clients she was seeing at which time due to cancelled appointments. It is the day that Ms. Hull began her investigation, after receiving an unacceptable explanation from Ms. Tarbet as to the discrepancies. Thus, it is clear that the evidence presented regarding April 29 was particularly relevant to the case and supported a finding that Ms. Tarbet intended to defraud the City, that her actions were

10

Case No. 2021-L-014

part of a plan, and that she knew her actions were wrong. Though it cast her in a negative light, probative value of the admission of evidence regarding April 29 outweighed the potential for unfair prejudice.

{¶39} Accordingly, we find the trial court did not err in allowing the state to present evidence of the events of April 29. Ms. Tarbet's third assignment of error is without merit.

{¶40} In light of the foregoing, the judgment of the Lake County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2021-L-014