[Cite as *Stave v. Beavers*, 2020-Ohio-69.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-A-0028** |
| BRADLEY DEE BEAVERS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court, Western District.
Case No. 2016 TRC 02096 W.

Judgment: Affirmed.


*Cecilia M. Cooper*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Prosecutor's Office, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*David E. Koerner*, Law Office of David E. Koerner, 5900 Som Center Road, Suite 12-146, Willoughby, OH 44094 (For Defendant-Appellant).


TIMOTHY P. CANNON, P.J.

{¶1}    Appellant, Bradley Dee Beavers ("Beavers"), appeals from the February 5, 2019 judgment entry of the Ashtabula County Court, Western District, finding him guilty on two counts of Operating a Motor Vehicle Under the Influence ("OVI"), in violation of R.C. 4511.19(A)(1)(a) and (A)(2), and one count of Operating without Reasonable Control, in violation of R.C. 4511.202. We affirm the trial court's judgment.

{¶2} On December 21, 2016, a complaint was filed with the Ashtabula County Court, Western District, charging Beavers with four counts: (1) Operating a Motor Vehicle Under the Influence, in violation of R.C. 4511.19(A)(1)(a); (2) Operating a Motor Vehicle Under the Influence, in violation of R.C. 4511.19(A)(2); (3) Driving under a Suspension in violation of R.C. 4510.16; and (4) Operating without Reasonable Control, in violation of R.C. 4511.202. The complaint was regarding an incident where Beavers was found in the parking lot of a Dollar General store during a snowy winter night. A truck registered to Beavers Built Construction was found in a nearby ditch outside the store. Beavers pled not guilty to all charges.

{¶3} Before trial, Beavers filed motions in limine seeking to limit what the state could present with regard to field sobriety tests conducted by officers at the scene of the incident. These motions were denied, and the matter proceeded to trial. No motion to suppress evidence was filed by Beavers. On February 5, 2019, a bench trial was held in the instant matter. At the trial, three witnesses testified for the state.

{¶4} Tori Pelligrino was an employee at the Dollar General store near where Beavers and his truck were found. She testified that she was familiar with Beavers as a customer, and he entered the store on December 20, 2016, to purchase brake fluid. She also testified that he was on his cell phone aggressively demanding that the person he was speaking to come to the store and help tow his truck out of the ditch.

{¶5} While purchasing the brake fluid, Pelligrino testified that Beavers stated to the person he was speaking to on his cell phone that he was coming from a local bar and had driven into the ditch. She stated no one else was with him at any time during the incident, and she witnessed him return to the vehicle after purchasing brake fluid, get in,

2

and "rock it back and forth" for several minutes in an attempt to get out of the ditch. Pelligrino also stated that she believed Beavers was "definitely intoxicated" based on her interaction with him.

{¶6} Next, Troopers Mika Cottom and Jason Haynes testified about their investigation into the incident. Upon approaching Beavers, Trooper Cottom and Haynes were told by Beavers that his brother's friend was driving the truck when it went into the ditch. Beavers claimed that the driver, whose last name and phone number were unknown, had left the scene to go retrieve help towing the truck from the ditch. The friend Beavers alleged was driving never returned to the scene during the investigation.

{¶7} Both troopers testified that during this exchange with Beavers, they noticed Beavers' speech was slurred, his eyes were glassy and bloodshot, and they detected an odor of alcohol. Beavers denied having consumed any alcohol for several years. Also, the troopers noticed some inconsistencies in Beavers' account of the incident—namely, there were no footprints in the snow on the passenger side of the truck where Beavers claimed to have exited the vehicle, the interior floorboard was wet from snowfall only on the driver side, and an unopened can of beer was in the truck.

{¶8} Trooper Cottom administered the Horizontal Gaze Nystagmus ("HGN") test, and he testified that Beavers showed all six possible clues associated with intoxication from the test. Following the HGN test, Beavers asked several times if he had "passed" the test before claiming he was physically unable to participate in any other field sobriety tests because he had a physical deformity that affected his balance and coordination. Trooper Cottom then placed Beavers under arrest for, inter alia, operating a motor vehicle under the influence of alcohol in violation of R.C. 4511.19. Beavers was transported by

3

Trooper Cottom to the Ashtabula Post for highway patrol, where he refused blood alcohol content ("BAC") testing.

{¶9} After the state rested its case-in-chief, defense counsel moved for a Rule 29 acquittal, which the trial court denied at that time. The defense moved for an acquittal again at the conclusion of the trial, and it was denied a second time.

{¶10} After hearing all the testimony and evidence, the trial court found Beavers guilty on three of the four charges brought against him. He was found not guilty of driving under a suspension in violation of R.C. 4510.16.

{¶11} Beavers filed a timely notice of appeal and raises three assignments of error. For clarity, we combine and consider the assignments of error accordingly.

{¶12} Beavers' first and third assignments of error both challenge the admission and consideration of the horizontal gaze nystagmus ("HGN") field sobriety test conducted by Trooper Cottom.

{¶13} Beavers' first assignment of error states:

THE TRIAL COURT ERRED BY ADMITTING EVIDENCE OF THE HORIZONTAL GAZE NYSTAGMUS FST WHERE THE STATE FAILED TO PROVE SUBSTANTIAL COMPLIANCE WITH NHTSA GUIDELINES BY CLEAR AND CONVINCING EVIDENCE.

{¶14} In his first assignment of error, Beavers challenges whether the state met their burden in justifying the admission of the HGN test by laying a foundation of substantial compliance with the National Highway Traffic Safety Administration ("NHTSA") guidelines. The state argues that the issue of whether the HGN test can be presented was not properly objected to by way of a motion to suppress and the objection has therefore been waived. We agree that the substantial compliance challenge has been waived.

4

{¶15} "'A Crim.R. 12(C)(3) motion to suppress evidence is the proper vehicle to challenge the admissibility of evidence to prove an OMVI charge on a claim that it was not procured pursuant to applicable standards or regulations.'" *State v. Dean*, 11th Dist. Portage No. 2007-P-0025, 2007-Ohio-6947, ¶37, quoting *State v. Murray*, 2d Dist. Greene No. 2002-CA-10, 2002-Ohio-4809, at ¶10, citing *Defiance v. Kretz*, 60 Ohio St.3d 1, 5 (1991).

{¶16} The differences between a motion to suppress and a motion in limine, as they relate to other field sobriety tests, were discussed in detail in the matter of *State v. French*, 72 Ohio St.3d 446 (1995). There, the Court stated, in pertinent part:

> The purpose and effect of a motion to suppress and a motion *in limine* are distinct. A "motion to suppress" is defined as a "[d]evice used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation of the Fourth Amendment (search and seizure), the Fifth Amendment (privilege against self incrimination), or the Sixth Amendment (right to assistance of counsel, right of confrontation etc.), of U.S. Constitution." Black's Law Dictionary (6 Ed.1990) 1014. Thus, a motion to suppress is the proper vehicle for raising constitutional challenges based on the exclusionary rule first enunciated by the United States Supreme Court in *Weeks v. United States* (1914), 232 U.S. 383, and made applicable to the states in *Mapp v. Ohio* (1961), 367 U.S. 643. * * *
>
> A "motion in limine" is defined as "[a] pretrial motion requesting [the] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to [the] moving party that curative instructions cannot prevent [a] predispositional effect on [the] jury." Black's Law Dictionary, *supra*, at 1013. The purpose of a motion *in limine* "is to avoid injection into [the] trial of matters which are irrelevant, inadmissible and prejudicial[,] and granting of [the] motion is not a ruling on evidence and, where properly drawn, granting of [the] motion cannot be error." *Id.* at 1013–1014. See *State v. Maurer* (1984), 15 Ohio St.3d 239, 259. * * *
>
> Confusion and inaccuracy may arise, however, because a motion *in limine* may be used in two ways. It may be used as a preliminary means of raising objections to *evidentiary issues* to prevent

prejudicial questions and statements until the admissibility of the questionable evidence can be determined outside the presence of the jury. It may also be used as the *functional equivalent* of a motion to suppress evidence that is either not competent or improper due to some unusual circumstance not rising to the level of a constitutional violation. Palmer, Ohio Rules of Evidence, Rules Manual (1984) 446, cited in *State v. Maurer, supra*, 15 Ohio St.3d at 259 fn. 14.

It is true that a subtle distinction exists between the exclusionary rule, which is relied upon when evidence is improperly seized, and the Rules of Evidence, which generally apply to procedural questions concerning the admissibility of evidence at trial. Moreover, challenges to the admissibility of chemical test results on the basis of noncompliance with Department of Health testing regulations do not present a question of constitutional magnitude. However, "[t]he traditional distinction between a motion to suppress based upon a constitutional challenge and a motion in limine does not work as a bright-line rule where the motion to suppress is directed to breathalyzer test results based on a failure to comply with ODH regulations." *Defiance v. Kretz, supra*, 60 Ohio St.3d at 4.

In holding at the syllabus that "[a] motion to suppress is a proper pretrial procedure for challenging breathalyzer test results when the defendant is charged with a violation of R.C. 4511.19(A)(3)," the *Kretz* court noted that the intent of the Rules of Criminal Procedure "is to determine matters before trial when possible." *Id.* at 4. This policy "applies not only to constitutional issues but also to non-constitutional claims capable of determination without a trial on the general merits." *State v. Ulis* (1992), 65 Ohio St.3d 83, 85.

It is well established that in a charge of violating R.C. 4511.19(A)(2) through (4) "[t]he accuracy of the test results is a critical issue in determining a defendant's guilt or innocence." *Kretz, supra*, 60 Ohio St.3d at 3. Although the admissibility of test results turns on substantial compliance with ODH regulations rather than compliance with the Constitution, this court determined in *Kretz* and *Ulis* that a ruling on a motion to suppress challenging the admissibility of a BAC test is not a preliminary ruling on an evidentiary matter. Rather, pursuant to Crim.R. 12(B)(3), challenges to the state's compliance with statutory and ODH regulations in a charge under R.C. 4511.19(A)(2) through (4) must be made in a pretrial motion to suppress, or such challenges are considered waived. * * *

Therefore, because Crim.R. 12(B)(3) applies to all charges under R.C. 4511.19, a defendant charged under R.C. 4511.19(A)(1) through (4) who does not challenge the admissibility of the chemical

6

test results through a pretrial motion to suppress waives the requirement on the state to lay a foundation for the admissibility of the test results at trial.

*Id.* at 449-451 (emphasis sic) (footnote omitted).

{¶17} In the matter sub judice, Beavers did not file a motion to suppress presentation of the HGN test before trial. While *French* dealt with a chemical test, we see no justification, based on the rationale contained therein, for not applying the same standard for the HGN test. Therefore, to the extent Beavers seeks to challenge whether the test was administered in substantial compliance with NHTSA standards, he has waived that challenge by not filing a motion to suppress.

{¶18} Beavers' first assignment of error has no merit.

{¶19} Beavers' third assignment of error states:

THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION IN LIMINE AND ADMITTING TESTIMONY REGARDING THE HGN FIELD SOBRIETY TEST WITHOUT EXPERT TESTIMONY.

{¶20} While Beavers has waived a challenge as set forth above, the Ohio Supreme Court in *French* also went on to state that "[t]his does not mean, however, that the defendant may not challenge the chemical test results at trial under the Rules of Evidence. Evidentiary objections challenging the competency, admissibility, relevancy, authenticity, and credibility of the chemical test results may still be raised." *Id.* at 452. Beavers may properly challenge whether the officer is qualified and competent to testify regarding the administration of the test. Therefore, we must determine whether the officer should have been permitted to testify regarding the administration and related conclusions regarding the HGN test.

{¶21} The two issues presented for review and argument in Beavers' third assignment of error are whether the HGN test was relevant under the rules of evidence and whether expert testimony was necessary to present HGN evidence.

{¶22} "'The trial court has broad discretion in the admission and exclusion of evidence.'" *Dean*, *supra*, at ¶29, quoting *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967). In general, when admission of evidence is within the discretion of the trial court, an appellate court shall not disturb evidentiary rulings absent an abuse of that discretion. *Id.*

{¶23} "The term 'abuse of discretion' denotes a trial court's '"failure to exercise sound, reasonable, and legal decision-making."'" *State v. King*, 11th Dist. Portage No. 2009-P-0040, 2010-Ohio-3254, ¶67, quoting *State v. Beecher*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

{¶24} "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

{¶25} In order to prove a violation of R.C. 4511.19(A)(1)(a), the state must establish that Beavers operated a vehicle within this state while under the influence of alcohol.

{¶26} In order to prove a violation of R.C. 4511.19(A)(2), the state must establish that Beavers, within twenty years of the conduct described in division (A)(2)(a), has previously been convicted of or pleaded guilty to a violation of R.C. 4511.19(A)(1), and did both of the following: operated a motor vehicle under the influence of alcohol and refused to take a chemical test when requested by an officer.

8

{¶27} In order to prove a violation of R.C. 4511.202, the state must establish that Beavers operated a motor vehicle on any street, highway, or property open to the public for vehicular traffic without being in reasonable control of the vehicle.

{¶28} In accordance with the OVI statute, R.C. 4511.19(D)(4)(b) states:

> In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, [or] of a municipal ordinance relating to operating a vehicle while under the influence of alcohol * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
>
> > (i) The officer may testify concerning the results of the field sobriety test so administered.
> >
> > (ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
> >
> > (iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.

{¶29} Here, the HGN test, as well as all field sobriety tests, are relevant to the charged crimes because they are indicative of whether Beavers was under the influence of alcohol, which is an element of the charges.

{¶30} Beavers' challenge to the HGN test under this assigned error is a challenge to the test's admissibility without expert testimony. As noted, however, R.C. 4511.19(D)(4)(b) specifically allows for testimony and evidence of the HGN test to be

9

presented—without reference to an expert—where the test was administered in accordance with the applicable testing standards under NHTSA. It was not error for the trial court to deny the motion in limine and admit the officer's testimony regarding the results of the HGN test without an expert.

{¶31} Beavers' third assignment of error has no merit.

{¶32} Beavers' second assignment of error states:

THE TRIAL COURT ERRED BY DENYING BEAVERS' MOTION FOR ACQUITTAL AS TO THE CHARGE OF OVI.

{¶33} The two issues presented for review and argument under this assignment of error state:

[1.] Whether Beavers' conviction for OVI was supported by sufficient evidence?

[2.] Whether Beavers' conviction for OVI is against the manifest weight of evidence?

{¶34} Beavers' second assignment of error challenges both the sufficiency and the manifest weight of the evidence presented to the trial court. Likewise, we will address these issues individually.

**Manifest Weight of the Evidence**

{¶35} In determining whether the verdict was against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A judgment of a trial court should be reversed as being against

10

the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶36} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*.'" *Id.* (emphasis sic), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶37} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶38} As discussed above, in order to prove a violation of R.C. 4511.19(A)(1)(a), the state must establish that Beavers operated a vehicle within this state while under the influence of alcohol. In order to prove a violation of R.C. 4511.19(A)(2), the state must establish that Beavers, within twenty years of the conduct described in division (A)(2)(a), has previously been convicted of or pleaded guilty to a violation of R.C. 4511.19(A)(1) and did both of the following: operated a motor vehicle under the influence of alcohol and refused to take a chemical test when requested by an officer. Finally, in order to prove a violation of R.C. 4511.202, the state must establish that Beavers operated a motor vehicle on any street, highway, or property open to the public for vehicular traffic without being in reasonable control of the vehicle.

11

{¶39} In the present matter, there was ample evidence that would allow the trial court to find that Beavers was guilty of each of the three offenses of which he was convicted. Both troopers who investigated the incident, along with a lay witness working at the Dollar General store, testified as to the multitude of different indicia suggesting intoxication. Each witness identified Beavers as having slurred speech, bloodshot and glassy eyes, and emanating an odor of alcohol. Pelligrino testified to personally seeing Beavers operating his truck when trying to get out of the ditch, as well as hearing Beavers state that he was driving when the truck veered off into the ditch. The troopers cited the lack of footprints on the passenger side of the vehicle and the discovery of a dry passenger seat floorboard during their investigation as an explanation for believing that Beavers was being untruthful in his story about a different driver having crashed the truck and left the scene to get help. Also, the parties stipulated to the existence of additional OVI convictions within the previous twenty years.

{¶40} Given all this evidence, the trial court was entitled to assess the credibility of the testimony of the three witnesses, as well as the dashcam video and other evidence submitted by the parties, and ultimately conclude that Beavers was guilty of the crimes charged. In doing this, the trial court did not clearly lose its way and create such a manifest miscarriage of justice that we must reverse. Therefore, the verdicts on each of the three guilty counts were not against the manifest weight of the evidence.

**Sufficiency of the Evidence**

{¶41} "A Crim.R. 29 motion challenges the sufficiency of the evidence presented by the state." *Sullivan*, *supra*, at ¶28, citing *State v. Wireman*, 4th Dist. Pike No. 01CA662, 2002-Ohio-1526, ¶9, citing *State v. Williams*, 74 Ohio St.3d 569, 576 (1996).

12

{¶42} "A challenge to the sufficiency of the evidence raises a question of law as to whether the prosecution met its burden of production at trial." *State v. Bernard*, 11th Dist. Ashtabula No. 2016-A-0063, 2018-Ohio-351, ¶56, citing *Thompkins*, *supra*, at 390 and *State v. Windle*, 11th Dist. Lake No. 2010-L-033, 2011-Ohio-4171, ¶25. "'In reviewing the record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."'" *Id.*, quoting *State v. Smith*, 80 Ohio St.3d 89, 113 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Where there is insufficient evidence, a conviction will be vacated. *Id.* at ¶55, citing *State v. Rose*, 11th Dist. Lake No. 2014-L-086, 2015-Ohio-2607, ¶32.

{¶43} "A finding that a judgment is not against the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence." *Sullivan*, *supra*, at ¶28, citing *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶32.

{¶44} Therefore, having determined that none of Beavers' convictions are against the manifest weight of the evidence, it follows that they are supported by sufficient evidence.

{¶45} Beavers' second assignment of error is without merit.

{¶46} The judgment of the Ashtabula County Court, Western District, is affirmed.


THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.

13