[Cite as *State v. Rucker*, 2025-Ohio-5466.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NOS. 2024-T-0075** <br> **2024-T-0077** <br> **2024-T-0078** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeals from the <br> Newton Falls Municipal Court |
| CHANCE I. RUCKER, | |
| Defendant-Appellant. | Trial Court Nos. 2024 CRB 00190 A <br> 2024 CRB 00190 B <br> 2024 CRB 00190 C |

## OPINION AND JUDGMENT ENTRY

Decided: December 8, 2025
Judgment: Affirmed

*J. Jeffrey Limbian*, City of Newton Falls Prosecutor, 19 North Canal Street, Newton Falls, OH 44444 (For Plaintiff-Appellee).

*Wesley A. Johnston*, P.O. Box 6041, Youngstown, OH 44501 (For Defendant-Appellant).

ROBERT J. PATTON, P.J.

{¶1} Defendant appellant, Chance I. Rucker ("Rucker"), appeals his convictions in the Newton Falls Municipal Court for arson, misconduct at emergency, and inducing panic, misdemeanors of the first degree. Rucker raises a single assignment of error on appeal asserting that the plaintiff-appellee, State of Ohio ("State"), failed to present sufficient evidence to support his convictions.

{¶2} After viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the offenses proven beyond a

reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). In other words, if believed, the evidence presented against Rucker would support a conviction on each of the offenses. Therefore, Rucker's sole assignment of error is without merit.

{¶3} Accordingly, we affirm the judgment of the Newton Falls Municipal Court.

**Substantive and Procedural Facts**

{¶4} On January 29, 2024, Rucker was initially charged with aggravated arson, a first-degree felony, in violation of R.C. 2909.02, in Newton Falls Municipal Court Case No. 2024 CRA 00027. On the same day, Rucker was also charged with making false alarm, a first-degree misdemeanor, in violation of R.C. 2917.32; misconduct at emergency, a first-degree misdemeanor, in violation of R.C. 2917.13; inducing panic, a first-degree misdemeanor, in violation of R.C. 2917.31; and obstructing official business, a second-degree misdemeanor, in violation of R.C. 2921.31, in Newton Falls Municipal Court Case Nos. 2024 CRB 00028A, 2024 CRB 00028B, 2024 CRB 00028C, and 2024 CRB 00028D.

{¶5} On February 2, 2024, a preliminary hearing was held in Case No. 2024 CRA 00027. The trial court did not find probable cause for the felony and reduced the aggravated arson charge to a first-degree misdemeanor. The reduced charge was refiled as Case No. 2024 CRB 00028E.

{¶6} On April 30, 2024, upon the State's motion, Case No. 2024 CRB 00028E was dismissed. The charge was refiled against Rucker as aggravated arson, a first-degree felony, in violation of R.C. 2909.02 (A)(1), in Newton Falls Municipal Court Case No. 2024 CRA 00149. Case No. 2024 CRA 00149, along with the remaining charges in

Case Nos. 2024 CRB 00028 A-D, were bound over to the Trumbull County grand jury on May 10, 2024.

{¶7} On June 12, 2024, the Trumbull County grand jury charged Rucker with three first-degree misdemeanors: arson, in violation of R.C. 2909.03(A)(1)&(D)(1); misconduct at emergency, in violation of R.C. 2917.13(A)(1)&(C); and inducing panic, in violation of R.C. 2917.31(A)(1)&(C)(1). On June 17, 2024, the charges were remanded to the Newton Falls Municipal Court and refiled as Case Nos. 2024 CRB 00190 A, B, & C.

{¶8} Rucker was arraigned on the remanded charges on June 27, 2024. He entered an initial plea of "not guilty" and bond was set at $5,000 surety. Through counsel, on August 9, 2024, Rucker filed a motion in limine seeking an order to exclude eleven photographs. Rucker sought to prohibit the government from discussing his previous arrests and prior criminal history. Rucker also sought to exclude testimony relating to the costs of the fire department who responded to the apartment complex. The trial court did not rule on this motion prior to trial. The underlying cases proceeded to a jury trial on September 4, 2024.

{¶9} The following facts were presented at trial:

{¶10} On January 29, 2024, at approximately 3:30 a.m., 911 received an emergency call from a resident of the Newton Village Apartments, an apartment complex located at 609 Ridge Road in Newton Falls, Trumbull County, Ohio. Michael Grondeski ("Grondeski"), was a resident of Apartment 216 in the Newton Village Apartments. He testified that he called the maintenance supervisor who lived upstairs because the fire alarm in the building was going off. According to Grondeski, the supervisor was out of

town and advised Grondeski to call 911. Grondeski called 911, and then he exited the building.

{¶11} Julie Lemon ("Lemon"), another resident at the Newton Village Apartments, testified that her dog woke her up around 3:30 a.m. due to the fire alarm ringing. Lemon stated that she called 911 and was advised to exit the building. Lemon twisted her ankle on the way out of the building. Lemon testified that as a result of the injury, she had to wear a stirrup splint for three weeks and use crutches. According to Lemon, she did not smell smoke until she went outside. Lemon said she saw black smoke billowing out of a window.

{¶12} Doddi Korosec ("Korosec"), the property manager of the Newton Village Apartments, testified that the apartment complex consists of four high-rise buildings and eighteen condo-style layouts. Korosec testified that Rucker was a resident of the complex and resided in Apartment 304 at the time of the incident. According to Korosec, a female named Alyssa once resided with Rucker but had moved out.

{¶13} Korosec testified that on January 29, 2024, she received a call from one of the residents after 2:00 a.m. When Korosec was on her way to the complex, she received a call from 911, advising her of a similar report about the fire alarm. When Korosec arrived at the complex, some residents were already outside of the building, along with several emergency vehicles. Korosec testified that she did not see any smoke.

{¶14} Deputies Dennis Garito ("Deputy Garito") and Zachary Zigmont ("Deputy Zigmont"), from the Trumbull County Sheriff's Office responded to the apartment complex. When the deputies arrived, residents were seen exiting the building. Deputy Garito testified that the initial concern was to get the building evacuated. According to Deputy

Case Nos. 2024-T-0075, 2024-T-0077, 2024-T-0078

Garito, the fire alarm was going off and he was banging on the doors to get people out of the apartments.

{¶15}   Deputy Anthony Farkas ("Deputy Farkas") also responded to the apartment complex and began assisting with the evacuation of the building. Deputy Farkas testified that he did not see smoke but he was able to smell it. According to Deputy Farkas, the residents appeared to be panicked, shocked, and confused about what was happening.

{¶16}   The source of the smoke was identified as somewhere on the third floor. Deputy Zigmont and Sergeant Bryan Galida ("Sergeant Galida") proceeded to the third floor of the apartment building.  According to Sergeant Galida and Deputy Garito, there was smoke in the hallway and you could smell it. Deputy Cory Graham ("Deputy Graham") testified that a strong odor of smoke was present outside of Apartment 304.

{¶17}   Sergeant Galida testified that officers were able to evacuate the apartments surrounding Rucker's and that each of those residents permitted officers to enter their apartments to verify that there was no smoke or fire inside. Deputy Zigmont stated that he and Sergeant Galida made contact with Rucker and asked if anything was on fire in his apartment. According to Deputy Zigmont, Rucker told officers the apartment belonged to a friend and that nothing was on fire.  Sergeant Galida and Deputy Zigmont said they tried to see into Rucker's apartment, but that Rucker blocked the door with his body preventing officers from seeing anything inside. Rucker was instructed to evacuate. According to Sergeant Galida, Rucker retreated into the apartment. When Rucker exited the apartment a few minutes later, he locked the door behind him.

{¶18}   Firefighters Atlanta Spahlinger and Christopher Sanchez ("Sanchez) of the Newton Falls Fire Department responded to the apartment complex along with three other

Case Nos. 2024-T-0075, 2024-T-0077, 2024-T-0078

fire departments. Sanchez testified that evacuations were in progress when they arrived on scene. Sanchez proceeded directly to the third floor with a portable water can. When Sanchez reached the third floor, he met Newton Falls Fire Chief, James Williamson (Chief Williamson). Together, by process of elimination, they located and identified Rucker's apartment as the origin of the smoke. According to Sanchez and Williamson, smoke was coming out of the door of Rucker's apartment.

{¶19} Chief Williamson forced open the apartment door before Deputy Zigmont and Deputy Farkas were able to locate Rucker or obtain a key to unlock the apartment. Sanchez testified that "there was an increased amount of smoke that came out of the apartment" once the door was opened.

{¶20} Deputy Garito entered the apartment with the fire department. According to Deputy Garito, the apartment smelled like cat urine, there was feces on the ground, and trash and papers across the apartment. The smoke was thicker in the apartment and appeared to be coming from the bathroom. Deputy Garito discovered a piece of fabric in the sink of the bathroom. According to Deputy Garito and Sanchez, the fabric was charred and "smoldering." Deputy Garito stated that he could tell that it was on fire because it was burnt and black. Neither Sanchez nor Deputy Garito testified to observing flames or red embers. Since the fabric was in the sink, Sanchez turned the faucet on to put it out.

{¶21} After the discovery in Rucker's apartment, Sergeant Galida exited the building to look for Rucker outside. Sergeant Galida said that he observed a vehicle running in the parking lot with two occupants. He identified Rucker as the passenger in the vehicle. Sergeant Galida informed other deputies of Rucker's location. Deputy Garito stepped out of his vehicle and motioned for Rucker to exit the vehicle. According to

Case Nos. 2024-T-0075, 2024-T-0077, 2024-T-0078

Deputy Garito and Deputy Zigmont, Rucker initially refused. Deputy Graham described Rucker as argumentative. Rucker eventually got out of the vehicle and officers surrounded him. Deputy Garito read Rucker his rights and detained him. Rucker advised Deputy Garito he would only speak to a supervisor. According to Sergeant Galida, Rucker explained that he was burning incense in the apartment and fell asleep.

{¶22} Korosec testified that there were nine animals inside Rucker's apartment at the time of the incident: one dog, and eight cats. The day after the fire, Korosec entered Rucker's apartment to feed the animals. Korosec testified that when she entered the apartment, it smelled like smoke. According to Korosec, after the incident, the carpets had to be replaced in the apartment.

{¶23} Korosec further testified that approximately two weeks after the incident, she took several photographs of the apartment. Korosec testified that State's Exhibit B appeared to depict that kitty litter was poured over something that was on fire in the apartment causing damage to the carpeting. Korosec testified that the area "appeared to have been lit on fire." In State's Exhibit C, Korosec described that there was a pile of clothing and that "most of it seemed to have caught on fire." The photographs were taken in the closet of the master bedroom of Rucker's apartment. State's Exhibit D, E, and F were photographs of seemingly burned items. The trial court did not admit these exhibits at trial.

{¶24} After the State rested, defense counsel orally made a Crim.R. 29 motion for acquittal and a motion for a new trial. The trial court denied the motion for acquittal. The trial court did not address the motion for a new trial. The defense subsequently rested.

{¶25} The jury found Rucker guilty on all charges. With respect to the charge of misconduct at emergency, the jury made the affirmative finding that the misconduct "caused a risk of physical harm to persons."

{¶26} On September 12, 2024, the trial court sentenced Rucker as follows:

{¶27} On the arson conviction, the trial court imposed a jail term of 180 days and imposed a $1,000 fine. The trial court suspended 150 days of the jail term and $750 of the fine. The trial court also ordered Rucker to serve a year of probation with the additional condition that he complete a mental health evaluation and comply with any treatment recommendations.

{¶28} As to the convictions of misconduct at emergency and inducing panic, the trial court imposed a jail term of 180 days and a fine of $500 on each offense. The jail terms and fines were suspended.

{¶29} Rucker was also before the court for sentencing on a probation violation because of his convictions in the instant case. The trial court found Rucker guilty of the violation and imposed a jail term of 30 days. The sentence was ordered to be served consecutively to the 30 days he was ordered to serve on the arson conviction for an aggregate jail sentence of 60 days.

{¶30} After the trial court announced its sentence, Rucker made an oral motion to stay his sentence pending appeal, which was granted. Rucker timely filed his notice of appeal on September 19, 2025. Rucker subsequently requested a limited remand of this case for disposition on his motion for new trial. This court granted the motion for a limited remand on April 10, 2025. Five days later, on April 15, 2025, the trial court denied Rucker's motion for a new trial. The record was refiled and briefing commenced.

{¶31} Rucker raises a single assignment of error for review: "There was insufficient evidence to support [Rucker]'s convictions for arson, misconduct at emergency and inducing panic." The State did not file an answer brief.

**Sufficiency of Evidence**

{¶32} Rucker asserts that the State presented insufficient evidence to support his convictions and that the jury engaged in improper inference stacking to find Rucker guilty of the offenses.

{¶33} An appellate court reviewing the sufficiency of the evidence examines the evidence admitted at trial and determines whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991), *superseded by constitutional amendment on other grounds as stated by State v. Smith*,1997-Ohio-355, fn. 4, paragraph two of the syllabus. "'On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.'" *State v. Ross*, 2018-Ohio-452, ¶ 34 (11th Dist.), quoting *State v. Thompkins*, 1997-Ohio-52, ¶ 36 (Cook, J., concurring). Whether the evidence is legally sufficient to sustain a verdict is a question of law which we review de novo. *Ross* at ¶ 34, citing *Thompkins* at ¶ 23. "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Noble*, 2021-Ohio-1062, ¶ 42 (11th Dist.), citing *State v. Tenace,* 2006-Ohio-2417, ¶ 37.

{¶34} A conviction may be supported by circumstantial and direct evidence.

> "[C]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Fasline*, 11th

Dist. Trumbull No. 2014-T-0004, 2015-Ohio-715, ¶39, citing *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), citing *Jenks*, supra, paragraph one of the syllabus. "Circumstantial evidence has been defined as testimony not grounded on actual personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established." *State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001, 2014-Ohio-4304, ¶22, citing *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988). An inference is "'a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven.'" *State v. Nevius*, 147 Ohio St. 263, 294 (1947), quoting *Eusel v. Lumber Ins. Co. of New York*, 88 Ohio St. 269, 282 (1913). "It consequently follows that 'when circumstantial evidence forms the basis of a conviction, that evidence must prove collateral facts and circumstances, from which the existence of a primary fact may be rationally inferred according to common experience.[']" *State v. Armstrong*, 11th Dist. Portage No. 2015-P-0075, 2016-Ohio-7841, ¶22, quoting [*State v.] Windle,* [2011-Ohio-4171], at ¶34.

A conviction, however, may not be based upon the "stacking of inferences." *Payne*, *supra,* at ¶ 23. "When an inference, which forms the basis of a conviction, is drawn solely from another inference and that inference is not supported by any additional facts or inferences drawn from other established facts, the conviction is improper." *Id*.; *see also State v. Maynard*, 10th Dist. Franklin No. 11AP-697, 2012-Ohio-2946, ¶ 27. "The rule against inference-stacking essentially forbids the drawing of an inference from evidence, which is too uncertain or speculative or which raises merely a possibility or conjecture. While reasonable inferences may be drawn from the facts and conditions established, they cannot be drawn from facts or conditions merely assumed." *Armstrong, supra,* at ¶ 23.

*State v. Bernard,* 2018-Ohio-351, ¶ 58-59 (11th Dist.).

### 1. Arson

{¶35} Rucker alleges that the State failed to present sufficient evidence that Rucker acted knowingly for purposes of the arson conviction. He also argues that the

Case Nos. 2024-T-0075, 2024-T-0077, 2024-T-0078

State failed to present sufficient evidence of a fire or that Rucker created a substantial risk of harm to property he did not own. We disagree.

{¶36} Rucker was convicted of arson in violation of R.C. 2909.03(A)(1). R.C. 2909.03(A)(1) provides: "No person, by means of fire or explosion, shall knowingly do any of the following: (1) Cause, or create a substantial risk of, physical harm to any property of another without the other person's consent."

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶37} The State presented evidence to establish that Rucker knew that something was burning inside his apartment. We conclude that there was no improper inference stacking in this case.

{¶38} According to officers, Rucker denied that anything was burning, blocked the deputies' view of the apartment, and locked the apartment before exiting the building. After officers entered the apartment with the assistance of the fire department, a cloth was discovered smoldering and smoking in the bathroom sink of Rucker's apartment. While the deputies did not observe any flames, the deputies testified that the cloth was burning because it was black, charred, and smoldering and that the smoke was thicker in the apartment. Firefighter Sanchez testified that he extinguished the smoldering cloth by turning on the faucet of the sink. After the burning cloth was extinguished, officers found

Rucker in the parking lot of the complex. It was reported to deputies that Rucker stated he was burning incense and fell asleep. However, law enforcement officers testified they did not see or smell any incense in the apartment.

{¶39} We conclude that there was sufficient evidence to show that Rucker was aware that his conduct would cause a certain result; i.e., cause physical damage to the apartment complex. Rucker had to be aware that the smoldering cloth, even in the sink, inside the apartment would probably cause damage to the apartment when left unattended in the apartment and unreported to law enforcement and firefighters. *See State v. Nelson*, 2003-Ohio-5699, ¶ 46 (11th Dist.). Thus, sufficient evidence was presented on the arson conviction.

## 2. Inducing Panic

{¶40} Rucker next asserts that in order to have presented sufficient evidence for a conviction of inducing panic, the arson charge must stand.

{¶41} R.C. 2917.31(A)(3) provides: "No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by doing any of the following: Committing any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm."

{¶42} It is uncontested that the apartment complex was evacuated due to the fire alarms ringing in the building. The fire alarms in the apartment complex went off due to the smoke between 2 and 3 o'clock in the morning. (Dkt. 50, p. 119, 153, 241). The fire doors inside the apartment complex were closed in response to the alarms. (Dkt. 50, p. 156, 164, 216). Law enforcement and fire departments responded and the building was evacuated. Emergency personnel deduced that the origin of the smoke was on the third

Case Nos. 2024-T-0075, 2024-T-0077, 2024-T-0078

floor. (Dkt. 50, p. 169, 223, 266, 279). Officials narrowed the possible apartments down to four, including Rucker's. (Dkt. 50, p. 219, 280-281).When asked, Rucker denied that anything was burning in his apartment. (Dkt. 50, p. 281). Rucker recklessly disregarded the likelihood that the smoldering cloth in his apartment would cause serious public inconvenience and alarm. Eventually, firefighters forced their way into Rucker's apartment to investigate the origin of the smoke and discovered the smoldering cloth in the bathroom sink. (Dkt. 50, p. 255-256).

**{¶43}** As such, we find the State presented sufficient evidence to support a conviction of inducing panic.

### 3. Misconduct at Emergency

**{¶44}** Finally, Rucker claims that the State failed to present sufficient evidence to support his conviction for misconduct at an emergency. R.C. 2917.13(A)(1) provides: "No person shall knowingly do any of the following: (1) Hamper the lawful operations of any law enforcement officer, firefighter, rescuer, medical person, emergency medical services person, or other authorized person, engaged in the person's duties at the scene of a fire, accident, disaster, riot, or emergency of any kind." Further "If a violation of this section creates a risk of physical harm to persons or property, misconduct at an emergency is a misdemeanor of the first degree." R.C. 2917.13(C).

**{¶45}** Law enforcement officers testified that when they inquired about a fire in the apartment, Rucker denied that anything was burning. (Dkt. 50, p. 220, 281). According to law enforcement, Rucker first indicated that the apartment belonged to someone else. (Dkt. 50, p. 281). Rucker also "bladed" his body to prevent officers from seeing inside the apartment. (Dkt. 50, p. 283). When Rucker evacuated as requested, he locked the door

Case Nos. 2024-T-0075, 2024-T-0077, 2024-T-0078

behind him. (Dkt. 50, p. 222). The smoke seemed to be coming from inside Rucker's apartment. When officers and firefighters checked and cleared all of the nearby apartments, firefighters forcibly entered Rucker's apartment to investigate. Upon entering the apartment, it was observed that the smoke was thicker. (Dkt. 50, p. 174). Officers and firefighters located the source of the smoke and identified it as a smoldering cloth inside Rucker's bathroom sink. (Dkt. 50, p. 174). After the discovery, law enforcement officers located Rucker inside of a vehicle in the parking lot. (Dkt. 50, p. 177). Rucker initially refused to exit the vehicle, but he eventually complied with the request of officers. (Dkt. 50, p. 177-178).

{¶46} The Tenth District Court of Appeals determined that there was sufficient evidence to support a conviction of a defendant who shut the power off when firefighters were investigating a ringing fire alarm. In *State v. Zaleski*, 2010-Ohio-5557 (10th Dist.), firefighters responded to a fire alarm. Smoke from burnt food had set off the fire alarm. After removing smoke from the building, the fire alarm continued to ring. Firefighters attempted to locate the electrical panel to reset the alarm. During their search for the panel, firefighters ran into Zaleski. Zaleski was told to leave the area and let the firefighters do their job. However, Zaleski was later observed attempting to disconnect electrical meters and he was informed to leave again. Despite being told to leave, Zaleski eventually turned the electric off in the building. The Tenth District held:

> [T]he record establishes that the malfunctioning fire alarm
> created a serious and urgent problem demanding the
> firefighters' immediate attention, and, therefore, that problem
> constituted an emergency pursuant to R.C. 2917.13(A)(1).
> Because an emergency existed when appellant interfered
> with the firefighters' duties by shutting off power to the
> apartment complex, sufficient evidence supports his
> conviction for misconduct at an emergency, and the trial court

Case Nos. 2024-T-0075, 2024-T-0077, 2024-T-0078

did not err by denying his original and renewed Crim.R. 29(A) motion for acquittal. Consequently, we overrule his first and second assignments of error.

*Zaleski* at ¶ 14.

**{¶47}** In the instant case, Rucker hampered law enforcement efforts at locating the source of the smoke by blocking entry to the apartment and by denying that anything was burning in the apartment. Rucker further hindered firefighters from accessing the apartment by locking the door behind him when he was evacuating the building.

**{¶48}** After viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the offenses proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 at 273. In other words, if believed, the evidence presented against Rucker would support a conviction on each of the offenses.

## Conclusion

**{¶49}** Rucker's sole assignment of error is without merit; therefore, the judgments of the Newton Falls Municipal Court are affirmed.


JOHN J. EKLUND, J.,

SCOTT LYNCH, J.,

concur.

Case Nos. 2024-T-0075, 2024-T-0077, 2024-T-0078

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignment of error is without merit. It is the judgment and order of this court that the judgments of the Newton Falls Municipal Court are affirmed.

Costs to be taxed against appellant.

PRESIDING JUDGE ROBERT J. PATTON

JUDGE JOHN J. EKLUND,
concurs

JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case Nos. 2024-T-0075, 2024-T-0077, 2024-T-0078